UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
FRANK LoCASCIO,

              Petitioner,

                                MEMORANDUM AND ORDER
   -against-                            00 CV 6015 (ILG)

UNITED STATES OF AMERICA,

              Respondent.
----------------------------------------------x
GLASSER, United States District Judge:

      In a decision reported in 267 F. Supp. 2d 306 (E.D.N.Y. 2003), this Court denied

the petitioner's motion to vacate, set aside or correct his sentence imposed 13 years ago,

on June 23, 1992.  His motion was based, among other things, upon a claimed ineffective

assistance of counsel which, in turn, was based upon facts supporting that claim, facts of

which he asserts could not have been discovered through the exercise of due diligence.

That claim is bottomed upon an affidavit from one of his lawyers in which he states that

Anthony Cardinale, LoCascio's trial lawyer, was threatened by LoCascio's co-defendant,

John Gotti, warning Cardinale not to emphasize the interest of LoCascio at Gotti's

expense during the course of the trial.  That affidavit also avers that Cardinale

thereafter, intimidated by Gotti's threats, conformed his conduct of the trial to comply

with Gotti's wishes.  The affidavit to which I make reference was not Cardinale's, but

that of LoCascio's lawyer reporting what he was told by Cardinale.  Cardinale refused to

allow his sworn declaration in support of the motion to be submitted out of alleged fear

for his welfare, but advised that he would testify if compelled to do so.

      In my decision denying the motion, I wrote: "That LoCascio first became aware of

the strictures (if indeed there were any) under which his counsel labored when he read

the Second Circuit's opinion on December 8, 1998, defies credulity."[1]  267 F. Supp. 2d at 316.  The opinion then discusses at great length the relevant portions of the record of the trial in support of that conclusion.  In the course of that discussion the Court observed that "The reasons advanced by Cardinale for his silence until now, defy credulity, stating as he does that, notwithstanding Gotti's death, he is still in fear for 'his welfare.'  One is then led to infer that a degree of fear has fallen below a level, finely calibrated by Cardinale, which has now given him the comfort to come forward that he didn't have while Gotti was imprisoned for life."  206 F. Supp. 2d at 319-20.  And after setting out relevant portions of Cardinale's summation which vigorously emphasizes the lack of evidence against LoCascio and individualizes his interest and not Gotti's, I wrote that his summation "thus exposes the baselessness of his allegedly anticipated declaration" arguing as his summation does, the lack of evidence against LoCascio without a reference to or even a mention of Gotti."  216 F. Supp. 2d at 322.

LoCascio appealed only that portion of his motion claiming ineffective assistance of counsel which this Court denied as being procedurally barred and otherwise meritless. The Court of Appeals remanded the case to this Court for an evidentiary hearing believing, "albeit by a narrow margin, that an evidentiary hearing would best clarify whether that subversion [of the adversary process] was attempted and succeeded." 395 F.3d 51, 57 (2d Cir. 2005).

The Mandate of the Court of Appeals was issued on February 28, 2005, and precluding an evidentiary hearing in accordance therewith is a motion to recuse and

---

[1]    The opinion referred to was the affirmance of the convictions of Gotti and LoCascio reported in 1998 WL 870230 (2d Cir. Dec. 8, 1998).

2

disqualify me pursuant to 28 U.S.C. § § 144 and 455 which is currently pending before

me.  Before addressing the legal issues raised by this motion, I will address the pertinent

paragraphs of LoCascio's affidavit, filed as required by 28 U.S.C. § 144, the affirmation

and Certificate of Good Faith of Herald Price Fahringer made "based on personal

knowledge, my familiarity with and review of the record, personal investigation as well

as on information and belief in support of Frank LoCascio's motion to recuse."  Mr.

Fahringer also certifies that he prepared the affidavit of Frank LoCascio at his request.

(Notice of Motion at 24).

I

**Petitioner's Submissions**

In <u>Rosen v. Sugarman</u>, 357 F.2d 794, 797-98 (2d Cir. 1966) (Friendly, J.), the

Court wrote:

> The principles governing the disposition of affidavits for
> disqualification under what is now 28 U.S.C. § 144 were laid
> down in <u>Berger v. United States</u>, 255 U.S. 22, 41 S.Ct. 230,
> 65 L.Ed. 481 (1921).   Although the facts stated in the
> affidavit are to be taken as true, the judge may inquire into
> their legal sufficiency.  Indeed he must do so.  There is 'as
> much obligation upon a judge not to recuse himself when
> there is no occasion as there is for him to do so when there
> is,' an obligation especially strong in a case like the present
> where the request for disqualification was not made at the
> threshold of the litigation and the judge has acquired a
> valuable background of experience.  To be sufficient an
> affidavit must show 'the objectionable inclination or
> disposition of the judge'; it must give 'fair support to the
> charge of a bent of mind that may prevent or impede
> impartiality of judgment.'  255 U.S. at 33-34, 41 S.Ct. at 233.
> (internal citation omitted).

In the discharge of that duty, I undertake an inquiry into the legal sufficiency of

the affirmation and Certificate of Good Faith and the Affidavit of Frank LoCascio.

Because the affidavit of LoCascio was prepared by Counsel and is an abbreviated version of Counsel's affirmation and certificate, I will address the latter first and then the affidavit.

Counsel's affirmation begins with a "Procedural History" which is remarkable for its selectivity,[2] citing only this Court's exhaustive opinion denying the defendant's motion for a new trial reported in 171 F.R.D. 19 (E.D.N.Y. 1997), and the Summary Order affirmance in 166 F.3d 1202 (2d Cir. 1998). The only other "Procedural History" event he notices is this Court's disqualification of Bruce Cutler, Gerald Shargel and John Pollok reported in 771 F. Supp. 552 (E.D.N.Y. 1991), (which he doesn't cite), and the disqualification of George Santangelo reported in 782 F. Supp. 737 (E.D.N.Y. 1992) (which he does cite). Curiously, the last citation is followed by the citation to 6 F.3d 924 (2d Cir. 1993), cert. denied, 511 U.S. 1070 (1994), with no indication that the disqualifications were affirmed. As regards the disqualification of Santangelo, the Court of Appeals wrote:

> LoCascio's Sixth Amendment concerns are not the only
> interests at stake here: the district court has an independent
> duty to protect the integrity of the judicial process, and the

---

[2]     A complete procedural history of this case would begin with a decision granting the defendants' motion to have their bail hearing closed to the public, reported in 753 F. Supp. 443 (E.D.N.Y. 1991) and eighteen written opinions thereafter. See 1991 WL 5728 (E.D.N.Y. Jan. 15, 1999); 755 F. Supp. 1159 (E.D.N.Y. Jan. 18, 1991); 771 F. Supp. 535 (E.D.N.Y. July 19, 1991); 771 F. Supp. 552 (E.D.N.Y. August 1, 1991); 776 F. Supp. 666 (E.D.N.Y. Oct. 23, 1991); 777 F. Supp. 224 (E.D.N.Y. Nov. 14, 1991); 782 F. Supp. 737 (E.D.N.Y. Jan. 21, 1992); 784 F. Supp. 1011 (E.D.N.Y. Feb. 10, 1992); 784 F. Supp. 1013 (E.D.N.Y. Feb. 11, 1992); 784 F. Supp. 1017 (E.D.N.Y. Feb. 25, 1992); 786 F. Supp. 229 (E.D.N.Y. March 9, 1992); 787 F. Supp. 319 (E.D.N.Y. March 13, 1992); 788 F. Supp. 700 (E.D.N.Y. March 19, 1992); 1993 WL 37344 (E.D.N.Y. Feb. 3, 1993); 6 F. 3d 924 (2d Cir. Oct. 8, 1993); 171 F.R.D. 19 (E.D.N.Y. April 3, 1997); 166 F. 3d 1202 (2d Cir. Dec. 18, 1998); 267 F. Supp. 2d 306 (E.D.N.Y. May 8, 2003); and 395 F.3d 51 (2d Cir. Jan. 12, 2005).

> government has its own fair trial interests that should not be unnecessarily impaired so that LoCascio can enjoy the services of ethically compromised counsel.  This is especially true in these circumstances, since LoCascio suffered no prejudice from the disqualification of Santangelo. . . .  <u>it is worth noting that this is not a case where an attorney worked on a case for months only to be disqualified on the eve of trial.  Santangelo filed his first notice of appearance on January 6, 1992, and was disqualified fifteen days later.  LoCascio cannot argue this disqualification impacted his ability to prepare for trial</u>.[3] (emphasis added).

6 F.3d at 935.

Bearing in mind that this is a motion to recuse and disqualify me pursuant to 28 U.S.C. § § 144 and 455, the issues raised by those statutes being very discrete and to be addressed subsequently, the purpose to be served by the balance of counsel's "Certificate of Good Faith" and its blatant irrelevancies to those issues will be left to others to surmise.

The next section of his "Certificate" is introduced as follows:

## The Trial

His one paragraph description of the trial is also memorable for its non-relevance to this motion:

> The government's main offensive was launched on the <u>questionable words</u> of Sammy Gravano and electronically

---

[3]   Counsel's affirmation concludes this truncated "Procedural History" with "Therefore, petitioner was forced to hire Anthony Cardinale, an attorney from Boston, Massachusetts.  Cardinale appeared for LoCascio on January 27, 1992," just 6 days after Santangelo was disqualified.

I take pains to comment upon these irrelevancies to this motion in counsel's affirmation, to dispel the appearance they create of this Court's penchant for capriciously disqualifying lawyers and for the prejudice it implies was suffered by LoCascio.  A familiarity with the Court's decisions in that regard will be assumed.

> intercepted recordings of conversations between Gotti,
> Gravano and others including Petitioner, on occasion.
> (emphasis mine).

The credibility of Gravano has been the suspect of several post-trial motions on which the Court has written extensively and which were decided adversely to the movants by this Court and the Court of Appeals, but nevertheless subtly raised again. A cursory review of the conversations introduced at trial reveals at least 8 extensive conversations to which the petitioner was a party and intercepted on November 8 and 30, 1989; December 12, 1989; January 4, 17 and 24, 1990.

In a footnote, Counsel writes that "the intercepted conversation concerning Gotti's direction to have Louis DiBono killed were conducted in the <u>absence of Frank LoCascio</u>. These discussions formed the core of the proof against Gotti at trial." (emphasis his).

That statement is false. LoCascio was the only one present. In the conversation between John Gotti and the petitioner intercepted on December 12, 1989, the following was heard:

Gotti:        *   *   *
              "DiB," did he ever talk subversive to you?

LoCascio:     Never.

Gotti:        Never talked it to Angelo and he never talked to "Joe Piney." I took
              Sammy's word that he talked about me behind my back. Louie, did he
              ever talk to any of you guys?

LoCascio:     No.

Gotti:        I took Sammy's word. Louie DiBono. And I sat with this guy. I saw the
              papers and everything. He didn't rob nothin'. You know why he's dying?
              He's gonna die because he refused to come in when I called. He didn't do
              nothing else wrong.

6

Gov. Ex. 3041 1A(T) at 31-32.  See also the trial transcript of February 20, 1992 at 2672-73.

The next section is headed:

### Judge Glasser is the Subject of Bomb Threats
### During the Trial of John Gotti and Frank LoCascio

I will not unduly burden this Memorandum and Order by a full replication of the relevant portions of the transcript which will put into proper context the reference to bomb threats and courtroom security concerns during the trial around which that reference was made out of the presence of the jury, nor will I attempt to divine the relevance of that to this recusal motion.  I will put into context what Counsel describes as "demeaning comments" directed to Mr. Cardinale that the Court made in front of the jurors (Tr. 5407), and the motion for a mistrial made by Cardinale and denied (Tr. 5408).

The government offered an exhibit in evidence to which Mr. Mitchell, LoCascio's co-counsel, objected and then accepted the Court's offer of a sidebar on its admissibility. The Court noticed Mr. Cardinale's absence at the sidebar and the transcript reflects the following:

| The Court: | Where is Mr. Cardinale?<br>(open court) |
|---|---|
| The Court: | Are you interested in this sidebar, Mr. Cardinale?<br>If you're not, it's perfectly all right with me.  I just don't want to go ahead with the sidebar in your absence.<br>(Whereupon, the following occurred at sidebar). |
| The Court: | I'm not requiring your presence here, if you choose not to. |
| Mr. Cardinale: | Judge, if you would stop attempting to demean me in front of the jury.<br>I'm making a motion now for a mistrial based upon a series of comments, the last of which I think has come to a point now that it's |

|   |   |
|---|---|
| | clear what the Court is doing, as far as its attempt to demean me in front of this jury. |
| | It's one thing to do it outside the presence of the jury. And that has certainly been going on throughout the course of this case. Now it's occurring in front of the jury, Your Honor. |
| | I'm moving for a mistrial. |
| | Thank you. |
| The Court: | Your motion is denied. |
| | Mr. Cardinale, I'm conducting a sidebar here with respect to a matter of proof that may pertain to your client, and I noted that you weren't here and I didn't know whether I should continue with the sidebar in your absence, Mr. Cardinale, and so I indicated to you, sir, that you're free to participate if you wish. |
| | You made your motion. Your motion is denied. |
| | Let me make another observation. |
| Mr. Cardinale: | So the record is clear, my co-counsel came up on the issue of the evidentiary issue. |
| | The Court then engaged in a colloquy loud enough for me to hear where I was and certainly loud enough for the jury to hear about some concerns that you were apparently having about security in your courtroom. |
| | I stayed back there for a reason, Judge, and that was to see if I could hear what you were saying from there. |
| | I realized after a few moments that this wasn't going to be about an evidentiary issue, and I could hear you from there, Judge. |
| The Court: | Gee whiz, Mr. LoCascio, if you were able to hear me – |
| Mr. Cardinale: | Mr. Cardinale, your Honor. |
| The Court: | Mr. Cardinale.<br>– I would certainly have appreciated had you come up immediately upon being able to hear what I'm saying back there and call that to my attention. |

Because it bears some relevance, however tangential, to this motion, I will address the next section of Counsel's "Certificate of Good Faith" in some detail. That section is headed:

**"Mr. Cardinale, I am Holding You,
Sir, in Summary Contempt"**

Mr. Cardinale proffered the testimony of a witness he sought to qualify as an expert who would give his opinion as to what should be heard of a word on an intercepted conversation. In denying his proffer, the Court stated, "There is not a single case that I have been able to find , and there is not a single case that which you have brought to my attention which permits an expert to testify as to what is being heard on a tape." (Tr. at 6958). The case of <u>United States v. Williams</u>, 583 F.2d 1194 (2d Cir. 1994), upon which Mr. Cardinale ostensibly relied was not applicable for reasons the Court explained. (Tr. 6958-6960). Mr. Cardinale continued to press the point concluding with:

> "And I'm going to ask him whether or not the portions of the transcript, the defense transcripts which still remain, in my view, in dispute are accurate, and he can then at least say that.
>
> You're telling me I can't even do that, Judge:

| | |
|---|---|
| The Court: | That's what I'm telling you. Mr. Cardinale, just let me make -- |
| Mr. Cardinale: | Quite frankly, your Honor, that's enough for me. That is enough for me. |
| The Court: | Thank you very much. |
| Mr. Cardinale: | There's nothing that you can say at this point that's going to illuminate anything in my mind. This is quite enough, Judge. |
| The Court: | Mr. Krieger, do you want to be heard? |

Mr. Cardinale: I can't believe that this court is ruling that I can't put a witness on the stand to say that my transcripts are accurate –

The Court: Mr. Cardinale, again –

Mr. Cardinale: -- when the government can do it. I can't understand it, and I'm sorry if I'm losing my temper. I have had enough. This is just too much. This is too much. I can't present a witness to say that my transcripts were accurate.

The Court: Mr. Cardinale, I'm just going to put you on notice.

Mr. Cardinale: I have been on notice. You can do anything you want to do. I've been on plenty of notice. I can't believe what's going on here. I can't believe it, as a practicing lawyer for 15 years in cases as complex as this.

The Court: Mr. Cardinale, I am holding you, sir, in summary contempt pursuant to 42(a) of the Federal Rules of Criminal Procedure.

I will certify the conduct which, in my view, constitutes summary contempt, and I'll prepare a certificate to that effect in accordance with 42(a) of the Federal Rules of Criminal Procedure.

I'll deal with the penalty to be imposed, Mr. Cardinale –

Tr. 6963-6965.

Justice White's opinion in Ungar v. Sarafite, 376 U.S. 575, 585-86 (1964), which I paraphrase, could easily have been applied to the foregoing colloquy:

> [t]his record does not leave us with an abiding impression that the trial judge permitted himself to become personally embroiled with [Cardinale]. Whatever disagreement there was between [Cardinale] and the judge stemmed from [Cardinale's] resistance to the authority of the judge and its exercise during the trial. . . . The judge dealt firmly with [Cardinale], but without animosity, and [Cardinale's] final intemperate outburst provoked no emotional reflex in the judge.

Sometime after the conclusion of the trial, on May 22, 1992, Cardinale appeared with counsel at the sentencing phase of the contempt proceeding at which the following

transpired:

| | |
|---|---|
| Mr. Cardinale: | . . . . I appear here today, first of all, with my thanks to the Court for allowing me to appear and to simply state, for the record, that I wish, again, to express my regret and to apologize for the nature of my actions, for losing my temper, and for the vehemence of my opposition to the Court's rulings back on March 24th. |

I have had a lot of time, obviously since then, to consider and reconsider those actions and I firmly believe there was no appropriate reason for the tone, tenacity and volume of my approach.

I realized that my disagreement with the Court's ruling should have ceased and that the appropriate forum for any disagreement was in another court on another day.

I have never in the past behaved in any fashion similar to that, and I can assure the Court it will never happen again.

| | |
|---|---|
| The Court: | Mr. Cardinale, I think you should know that, in the course of 18 years of judicial service, I have never held a lawyer in contempt before. |

I have been very sensitive, or at least tried to be. It may be self-serving, to the line, and it's a delicate line between vigorous advocacy and what might appropriately be regarded as conduct which crosses that line and does serve to obstruct the administration of justice and warrant a summary finding of contempt.

I was sensitive to it, or at least I tried to be, on March 24th, when I made the determination I did with you.

I may have expressed the thought on more than one occasion during the course of the trial that I regard the courtroom as a very almost holy place. I feel strongly about that.

Lawyers may disagree with rulings, lawyers may disagree with the way in which rulings may be expressed, as I have had occasion, I think, to remark during the course of that trial that the defendant is entitled to a fair trial, not a perfect one. I tried to be fair.

You disagreed with my rulings in that regard. Your disagreement was noted, and that should have been the end of it because this

notion of order in the court articulates something which is very, very basic to the mechanism of justice.

Somebody has to be very conscious of the notion that good manners and disciplined behavior and stability in the courtroom are the lubricants which make this system work.

When those cease to exist, then what you're dealing with, or what you will deal with, would be an orderly lawsuit turning into combat.

\* \* \*

I will accept your apology. I will vacate the finding of contempt and hope, Mr. Cardinale, although it may be presumptuous of me to say so, I hope that you learned something from the experience in terms of accepting a ruling of the Court, make your argument in terms of the disagreement with it in another forum.

Mr. Cardinale:      Yes, your Honor.

The Court:      I think that you will serve your clients more effectively in that way, in addition to yourself and your profession.

Mr. Cardinale:      Thank you, your Honor.

(Tr. 3 - 6).

More from the "Certificate of Good Faith."

> **Judge Glasser Sentences Frank LoCascio**
> **to Life Imprisonment and Denies All**
> **Five Post Trial Motions Filed by**
> **Mr. LoCascio**

The relevance of this recitation to this motion is difficult to fathom beyond the implication that having decided post-trial motions adversely to LoCascio establishes my bias against him. No mention is made of the fact that those determinations were challenged on appeal and affirmed. See 6 F.3d 924 (2d Cir. 1993) and 166 F.3d 1202 (2d Cir. 1998).

There are several portions of this section of the "Certificate of Good Faith" which, my view of professional responsibility and my responsibility for the integrity of the process, compel me to address. Counsel sets out selected bases upon which a motion pursuant to Fed. R. Cr. P. Rule 33 was made. Those recount allegations that one juror was unconstitutionally removed; that others were pressured to return guilty verdicts; that an alternate juror was not excused notwithstanding that her husband was previously employed by the FBI. Omitted is any reference to the Court's rulings which extensively related the facts pertaining to each juror and an equally extensive discussion of the applicable law supporting the determinations that were made. Most egregious, however, are excerpts from an affidavit and a letter from an anonymous juror critical of the conduct of the trial and of me ("the judge was so unfair to you and Mr. Gotti").

In the Memorandum and Order of June 22, 1992, to which Counsel makes reference and therefore his familiarity with it is properly assumed, the same anonymous communications were annexed as exhibits to the Rule 33 motion and in regard to which the Court wrote:

> There is a troubling aspect to this anonymous letter which I believe it is important to note. Counsel for the defendants obviously felt no restraint in annexing it to their moving papers notwithstanding its inadmissibility (see Fed. R. Evid. 606(b)) and its potential for creating speculative doubts upon the processes of this Court and indeed, the integrity of the criminal justice system itself. That potential was realized when that letter was widely disseminated on national television and in the daily tabloids. Thereafter the Court received a signed letter from a juror who was impelled to write in response to that anonymous letter. After excising the juror's name and number, the Court shared that letter with all counsel and advised them that at the Court's direction the letter was sealed and placed in the vault to protect that juror's anonymity. Because its admissibility is

13

questionable in light of Fed. R. Evid. 606(b), the Court did not consider it at all in arriving at this decision.  As the prior discussion clearly demonstrates, that letter could not add to the record itself upon which the Court relies exclusively.  The letter the Court received has not been filed with the record of this case.  <u>It is troubling, however, that the anonymous letter remains in the record without that response and perpetuates the imputation of procedural irregularity and a callous disregard of fundamental notions of fair play</u>.  (emphasis added).

It is troubling that present counsel still felt no restraint in incorporating those anonymous communications in his submissions and more so because they are totally irrelevant to the discrete issue presented by this motion.

Among the grounds upon which the motion addressed in the June 23, 1992 Memorandum and Order was based were, motions to recuse me pursuant to 28 U.S.C. § § 144 and 455.  Counsel erroneously asserts that the recusal motion was denied because "neither defendant made the request as required by statute."  (Def. Aff. at 10).  It was only the motion pursuant to 28 U.S.C. § 144 that was denied because the affidavits required by that statute were never filed.  The motion pursuant to § 455 was dismissed on the merits for reasons that were given in the Memorandum and Order.

LoCascio persists in relitigating his successive Rule 33 motions, the denials of which were affirmed in 1998 WL 870230 (2d Cir. Dec. 8, 1998), in which that Court wrote: "Judge Glasser carefully considered and ultimately rejected, each of these contentions in an opinion reported in 171 F.R.D. 19 (1997).  Although LoCascio attempts to recast some of these arguments before this Court, we are not persuaded that we should disturb any of Judge Glasser's carefully reasoned holdings on this appeal."  He "recasts some of these arguments" which he characterizes as "quite compelling," but

were nevertheless denied,  (Defs. Aff. at 12), notwithstanding their total irrelevance to the pending motion.

In that portion of his affirmation and Certificate of Good Faith headed **"The § 2255 Petition**," reference is made to the opinion in 1998 WL 870230 (2d Cir. Dec. 8, 1998), in which the Court is said to have written that <u>Brady</u> material which might have proved helpful to LoCascio was not disclosed because of a "unified trial strategy.  Thus, this decision put the defense on notice, for the first time, of the possibility that Frank LoCascio's trial attorney may have been laboring under a conflict of interest."  (Def. Aff. at 12-13).  A perusal of the opinion of the Second Circuit belies that reading of it.  While holding that the <u>Brady</u> material should have been revealed to LoCascio, "the information would only have provided additional material with which to impeach Gravano . . . not grounds for granting a Rule 33 motion." 1998 WL 870230 at * 2.  Nor is there anything in that opinion which would suggest that his attorney was "laboring under a conflict of interest."  Rather, the opposite is conveyed by the Court: "It is more probable than not that LoCascio, who together with Gotti and Gravano administered the Gambino crime organization was as fully aware of Conte's narcotics trafficking as were Gotti and Gravano.  In addition, <u>LoCascio and Gotti conducted a joint defense at trial, and we have no reason to believe they were not sharing all information relative to their defense</u>." (emphasis mine).

I will not belabor this appraisal of the Affirmation further by addressing (1) the stated possibility that I may be called as a witness regarding such irrelevancies to this motion such as threats allegedly directed at me during the trial (Def. Aff. at 19); (2) "This would hardly be the first time Gotti has threatened an attorney," citing as

15

authority for that [www.ganglandnews.com](http://www.ganglandnews.com), a news quote attributed to a detective and a snippet of an intercepted conversation torn from context (Def. Aff. at 20-21); and (3) references to prior decisions adverse to LoCascio which have either been affirmed or not challenged on appeal (Def. Aff. at 22-24).

LoCascio's affidavit, filed as required by 28 U.S.C. § 144, and in support of which that Affirmation and Certificate was filed, provides in relevant part:

> 6.      Anthony Cardinale, my former attorney, will be the principal witness at the hearing.  However, it became obvious during the trial that this Court is biased and prejudiced against Mr. Cardinale.  I noticed extraordinary tension between Mr. Cardinale and Judge Glasser throughout the proceedings.
>
> 7.      But things really began to heat up when Anthony Cardinale had to move for a mistrial based on what he described as a "series of comments, the last of which I think has come to a point now that it's clear what the Court is doing, as far as its attempt to demean me in front of this jury" (Tr. 5407).  Judge Glasser denied that motion (Tr. 5408).
>
> 8.      The hostility between my lawyer and the Court continued throughout the trial but reached a dramatic head ten days later, when <u>Judge Glasser held Anthony Cardinale in contempt</u> because he believed that Mr. Cardinale was demeaning the Court's authority (Tr. 6963-65).  I believe that Judge Glasser also indicated that Mr. Cardinale's conduct "offends the dignity of the court."  It is clear to me that this Court harbors strong feelings against Mr. Cardinale that would, inevitably, affect its consideration of Mr. Cardinale as a witness.
>
> 9.      Judge Glasser also has personal feelings or knowledge regarding disputed evidentiary facts, which would warrant his disqualification from these remand proceedings.  For example, I believe that Judge Glasser revealed that he, himself, had been subject to threats during the trial, including anonymous bomb threats in his chambers.  And, there was

an incredible number of U.S. Marshals guarding the courtroom, even after Sammy Gravano testified.

10.     After the trial was over, I read an interview that Judge Glasser gave regarding our case, and the Judge indicated that he did not feel intimidated during the trial.  In light of the well-publicized bomb threats against the Judge's chambers, and his personal statement that <u>he</u> did not feel intimidated, I believe that the Court cannot fairly and impartially consider how someone else, like Anthony Cardinale, would react to a death threat by John Gotti.

11.     In fact, in denying my Petition made pursuant to § 2255, without ever holding a hearing, this Court stated that "[t]he reasons advanced by Cardinale for his silence, until now, defy credulity."  This Court has also already concluded that my Petition is "<u>meritless</u>."

12.     Finally, this Court has repeated (sic) denied applications that I made before, during and after the trial – always finding in favor of the government.  It just seems as though the Court has it out for me and I simply cannot get a fair hearing before the Court.  This is especially true where the Court has personal feelings against me and Anthony Cardinale, whose credibility lies at the heart of the evidentiary hearing.

15.     I have never filed any other affidavit of bias or prejudice in this case.

## II

## <u>THE APPLICABLE LAW</u>

A.     The motion is predicated upon 28 U.S.C. § 144.  That statute provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the

> belief that bias or prejudice exists . . . .  It shall be
> accompanied by a certificate of counsel of record stating that
> it is made in good faith.  (June 25, 1948, c. 646, 62 Stat. 898;
> May 24, 1949, c. 139, § 65, 63 Stat. 99).

Two questions raised by a plain reading of the statute were certified to be answered in <u>Berger v. United States</u>, 255 U.S. 22 (1921).  They were: (1) Is the filing of the required affidavit sufficient to invoke the operation of the statute? and (2) Does the  judge have the right to pass upon the sufficiency of the affidavit?  Those questions were answered as follows:

> . . . the action of the affidavit is not automatic.. . but depends
> upon the substance and merits of its reasons and the truth of
> its facts, and upon both the judge has jurisdiction to pass.

255 U.S. at 30-31.

Elaborating upon the second part of that answer, the Court went on to write, quoting from <u>Henry v. Speer</u>, 201 Fed. 869 (5th Cir. 1913):

> . . .there is imposed upon the judge the duty of examining
> the affidavit to determine whether or not it is the affidavit
>  specified and required by the statute and to determine its
>  legal sufficiency.

225 U.S. at 32.

And, turning to that portion of the statute's requirement that the "affidavit shall state the facts and reasons for the belief"of the existence of bias or prejudice, the Court wrote that the purpose of the requirement

> . . . is a precaution against abuse, removes the averments and
> belief from the irresponsibility of unsupported opinion, and
> adds to the certificate of counsel the supplementary aid of
> the penalties attached to perjury. Nor do we think that this

view gives room for frivolous affidavits.

225 U.S. at 33.

In <u>Rosen v. Sugarman</u>, 357 F.2d 794 (2d Cir. 1966) (Friendly, J.), obedient to the

teaching of <u>Berger</u>, the Court emphasized the duty of the judge to inquire into the legal

sufficiency of the affidavit and added that "There is as much obligation upon a judge not

to recuse himself when there is no occasion as there is for him to do so when there is –

an <u>obligation especially strong is a case like the present where the request for</u>

<u>disqualification was not made at the threshold of the litigation and the judge has</u>

<u>acquired a valuable background of experience</u>." (emphasis added and internal citations

omitted). 357 F.2d at 797-98.

Although phrased differently in the countless cases in which the principle is

announced, simply stated it is that judicial rulings alone almost never constitute a valid

basis for a bias or partiality motion and that the "alleged bias and prejudice to be

disqualifying must stem from an extrajudicial source and result in an opinion on the

merits on some basis other than what the judge learned from his participation in the

case." Perhaps the most frequently cited case for that principle is <u>United States v.</u>

<u>Grinnell Corp.</u>, 384 U.S. 563, 583 (1966). In <u>Grinnell</u>, the Court's statements to defense

counsel upon which the motion to disqualify him was made were construed to suggest

that the Court had a closed mind, not hospitable to the defendants, on the merits of the

case. In denying the motion, the Court held that "The alleged bias and prejudice to be

disqualifying must stem from an extrajudicial source and result in an opinion on the

merits on some basis other than what the judge learned from his participation in the

case.  Any adverse attitudes that Judge Wyzanski evinced toward the defendants were based upon his study of the depositions and briefs which the parties had requested him to make."  Id. at 583.

To cite the approximately 900 cases in which Grinnell was followed would be an affectation of research.  I will refer to only one which is exquisitely apposite.  In United States v. Boffa, 513 F. Supp. 505 (D. Del. 1981), similar motions were filed by a Francis Sheeran, one of several defendants charged in an eleven count indictment.  In a prior civil case in which Sheeran had testified as a witness, the Court's opinion stated: "After hearing Mr. Sheeran's testimony and observing his demeanor, the Court has concluded that his story is not credible.  The Court simply does not believe that [Sheeran] would call a strike by one group of employees at a plant and at the same time give no instructions to the other union employees at the same plant.  Such a result seems especially unbelievable . . . .  The Court does not credit [his] testimony . . . .  Id. at 507. Sheeran's affidavit is mirrored by LoCascio's in alleging that "the judge has already assessed Mr. Sheeran's demeanor and holds a personal prejudice against him as a credible witness.  It is further believed by Mr. Sheeran that Judge Latchum cannot be impartial as a result.  The statements made in the above opinion fairly support Mr. Sheeran's belief that Judge Latchum's impartiality has been and will continue to be impeded by this personal prejudice and that Mr. Sheeran as a result will not receive a fair trial.  Judge Latchum's impartiality might reasonably be questioned in the event that Mr. Sheeran is called upon to testify in an evidentiary hearing with regard to co-defendant, Robert Respo.  His honor has already stated that Mr. Sheeran 'is not credible' after hearing his testimony and observing his demeanor."  Id. at 508.

(Emphasis added).

In denying the motion, the Court acknowledged his familiarity with <u>Berger v.</u> <u>United States</u>, *supra*, <u>Grinnell</u> and a host of others in holding that "Personal bias is an attitude arising from extrajudicial sources that results 'in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" 513 F. Supp. at 509.

In LoCascio's affidavit, he avers that he has "never filed any other affidavit of bias or prejudice in this case." Although literally correct, a motion to recuse me was previously made by him and denied because the affidavit required by § 144 was not made. His motion pursuant to § 455 was denied on the merits in the Memorandum and Order of June 23, 1992, alluded to above.

It is significant to note that no other motions to recuse me were made by either LoCascio or Gotti in the intervening thirteen years notwithstanding the "repeated denials" of his applications made "before, during and after the trial – always finding in favor of the government." (LoCascio Aff. ¶ 12). No motion to recuse me was made before the § 2255 motion was filed – the decision in which was the predicate for this pending motion. "The timeliness requirement of § 144 turns not only on the actual time elapsed, but particularly on the factor whether the affiant has participated in substantial pretrial motions between the time he first learned of the asserted bias and the time he filed his § 144 request," and quoting Judge Gibbons in <u>Smith v. Danyo</u>, 585 F.2d 83, 86 (3d Cir. 1978), the Court in <u>Boffa</u> added:

> The judicial process can hardly tolerate the practice of a
> litigant with knowledge of circumstances suggesting possible
> bias or prejudice holding back, while calling upon the court

> for hopefully favorable rulings, and then seeking recusal
> when they are not forthcoming.

513 F. Supp. at 510.

The foregoing discussion and a dispassionate and objective reading of LoCascio's affidavit compel the conclusion that there is absolutely nothing in it to support the claim that I ever had any substantive extrajudicial exposure to the facts surrounding this case which has been before me for the determination of a broad variety of pretrial, trial and post-trial issues. In denying this prong of the motion, I do so in the discharge of my duty to inquire into the sufficiency of his affidavit which I find legally wanting. See Rosen v. Sugarman, *supra* (the obligation not to recuse is especially strong when the request was not made at the threshold of the litigation and the judge has acquired a valuable background of experience).

B.    The second prong of this motion is bottomed upon 28 U.S.C. § 455, which provides in relevant part:

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>     (l) Where he has a personal bias or prejudice concerning a party . . . .

There is one observation made in the course of the extensive opinion denying LoCascio's § 2255 motion upon which principal reliance is based in making this motion. In 267 F. Supp. 2d at 319, I wrote: "the reasons advanced by Cardinale for his silence until now, defy credulity . . . ." One other observation may be referenced, when at page 322, after setting out a significant portion of Cardinale's summation to the jury, I wrote:

"His summation thus exposes the baselessness of his allegedly anticipated declaration, arguing as his summation does, the lack of evidence against LoCascio without a reference to or even a mention of Gotti."

In Garofalo v. Gravano, 23 F. Supp. 2d 272 (E.D.N.Y. 1998), I had occasion to review the history and the parameters within which § 455 is applied. I made reference to State of Idaho v. Freeman, 507 F. Supp. 706 (D. Idaho 1981), and quoted from that portion of the opinion, which, in turn, quoted from the legislative history leading to the amendment to § 455 as follows:

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for impartiality must *have a reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him not a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. H.R. Rep. No. 1453, 93rd Cong. 2d Sess. 405 reprinted in 1974 U.S. Code & Admin. News 6351 at 6355.

The essence of LoCascio's motion to recuse me could not be stated more plainly than it is in paragraph 12 of his affidavit – "this Court has repeated (sic) denied applications that I made before, during and after trial – always finding in favor of the government."[4]

It has been hornbook law for some time that bias and prejudice must come from an extrajudicial source and that hoary principle is applicable to § 455(a). Liteck v.

---

[4]    In 753 F. Supp. 443 (E.D.N.Y. 1990), I granted their motion to have their bail hearing closed to the public. In 755 F. Supp. 1159 (E.D.N.Y. 1991), I ordered the Warden of the MCC to release them from administrative detention.

United States, 510 U.S. 540, 554-55 (1994). In Garofalo v. Gravano, *supra*, I

manifested my awareness that § 455(a) requires disqualification when the judge's

impartiality *might* reasonably be questioned and that that determination is to be made

on an *objective* basis, not on the reality of bias or prejudice, but on the appearance of it.

See In re Mason, 916 F.2d 384, 386 (7th Cir. 1990).

　　Instructive in this regard are In re United States, 666 F.2d 690 (1st Cir. 1981)

(Coffin, J.), and especially, In re J.P. Linahan, Inc., 138 F.2d 650, 653-54 (2d Cir. 1943)

(Frank, J.), in which the Court wrote:

> [J]ust because [the judge's] fact-finding is based on his
> estimates of the witnesses, of their reliability as reporters of
> what they saw and heard, it is his duty, while listening to and
> watching them, to form attitudes towards them. He must do
> his best to ascertain their motives, their biases, their
> dominating passions and interests, for only so can he judge of
> the accuracy of their narrations. He must also shrewdly
> observe the stratagems of the opposing lawyers, perceive
> their efforts to sway him by appeals to his predilections. He
> must cannily penetrate through the surface of their remarks
> to their real purposes and motives. He has an official
> obligation to become prejudiced in that sense. Impartiality is
> not gullibility. Disinterestedness does not mean child-like
> innocence. If the judge did not form judgments of the actors
> in those court-house dramas called trials, he could never
> render decisions.

(footnotes omitted).

　　Returning to paragraph 12 of LoCascio's affidavit, it is correct that I decided most

motions adversely to him and his co-defendant, John Gotti. It is also correct that in

virtually every case, the denial was based upon the law as I understood it and explained

it in a written, often extensive, opinion, See footnote 2 *supra*, and all of which that were

appealed were affirmed. A resort to those opinions would, I believe, assure an objective,

knowledgeable member of the public that decisions which were adverse to the defendant were dictated entirely by the record before me and the law without the slightest suggestions of bias, prejudice or personal animus.

"A thoughtful observer understands that putting disqualification in the hands of a party whose real fear is that the judge will apply rather than disregard the law, could introduce a bias into adjudication." In re Mason, 916 F.2d at 386.

Accordingly, the motion is denied.[5]

SO ORDERED.

Dated:      Brooklyn, New York
           May 25, 2005

S/

_____
               I. Leo Glasser

---

[5]    I have neither discussed nor otherwise commented upon the cases upon which LoCascio relies in his Memoranda of Law in support of his motion because a reading of them readily reveals that each is plainly distinguishable and adds nothing to further an informed determination of this motion.

Copies of the foregoing Memorandum and Order were sent to:

Herald Price Fahringer, Esq.
Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP
780 Third Avenue, 32nd Floor
New York, NY 10017

Nicholas Bourtin, Esq.
Assistant U.S. Attorney